IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KARLIS WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Case No. 2:11-cv-61-TFM |
| | ) | (WO) |
| HYUNDAI MOTOR MANUFACTURING | ) | |
| ALABAMA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION and ORDER**

**I.  INTRODUCTION**

The plaintiff, Karlis Wright ("Wright"), a former employee of defendant Hyundai

Motor Manufacturing Alabama, LLC ("HMMA"), brings this action pursuant to the

American with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12117, Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. §

1981.  Specifically, he asserts that HMMA failed to accommodate his disability and

wrongfully discharged him in violation of the ADA.  In addition, he contends that the

defendant retaliated against him for filing a claim of discrimination against HMMA in

violation of Title VII and § 1981.  Wright seeks front pay, damages, and injunctive relief.

The court has jurisdiction of these claims pursuant to the jurisdictional grant in 42

U.S.C. § 12117 and federal question jurisdiction. Pursuant to the provisions of 28 U.S.C. §

636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to a United States Magistrate

Judge conducting all proceedings in this case and ordering the entry of final judgment.   On

April 30, 2012, Defendant filed a Motion for Summary Judgment. (Doc. No. 17.)  The court

has carefully reviewed the Motion for Summary Judgment and the parties' submissions and

concludes that the motion is due to be denied with respect to the wrongful termination claim

and granted with respect to the accommodation and retaliation claims.

## II. SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits,

if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986).[1]  The party moving for summary judgment "always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those portions of the

'pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[1]  In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the court stated:

"[Where the nonmoving party will bear the burden of proof at trial on a dispositive issue...Rule 56(e)...requires the nonmoving party to go beyond the pleadings and by...affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate  "specific facts showing that there is a genuine issue for trial. . . .We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment...Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c) except the mere pleadings themselves. . . .

*Id.* at 324.

2

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.

The movant may meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324. If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to establish, with evidence beyond the pleadings, that a genuine issue material to the non-movant's case exists. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-17 (11th Cir. 1993)("When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of [his] pleading, but [his] response ... must set forth specific facts showing that there is a genuine issue for trial."); *see also* FED. R. CIV. P. 56(e). What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

A dispute of material fact "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-movant must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. If the

non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n. 6 (11th Cir. 1997); *Harris v. Ostrout,* 65 F.3d 912 (11th Cir. 1995).

However, if there is a conflict in the evidence, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *Ruiz de Molina v. Merritt & Furman Ins. Agency*, 207 F.3d 1351, 1356 (11th Cir. 2000). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). With these principles of law in mind, the court will determine now whether summary judgment is appropriate and should be granted.

### III. FACTS[2]

Wright began working at HMMA as a production team member on June 6, 2005. (Attach. to Doc. No. 19, Def's Ex. A, Pl's Dep., p. 41.) During his employment, Wright worked in four different departments within the weld shop: (1) Moving Parts; (2) Body Complete 1; (3) Body Complete 2; and (4) Body Floor and Side. (Pl's Dep., pp. 41-48.)

In August 2006, Wright filed an EEOC complaint against HMMA, complaining that he was denied a promotion based on his race and age. (*Id.*, p. 61; Def's Ex. 4.) On

---

[2] On a motion for summary judgment, the court construes the facts in the light most favorable to the non-movant.

September 5, 2007, the EEOC determined that, "[b]ased on its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." (Def's Ex. 5.)  Wright subsequently filed a lawsuit in this court.  On November 16, 2010, the court granted summary judgment in favor of HMMA and dismissed the case.  *See Wright v. Hyundai Motor Manufacturing Alabama, LLC*, Civ. Act. No. 2:08cv61-SRW.

Wright was assigned to the Body Floor and Side department between November 6, 2006 and May 4, 2009.[3]  During this time, Wright suffered from a variety of injuries and medical conditions.  On December 29, 2006, Dr. Warner Pinchback, an orthopedic surgeon, diagnosed Wright as suffering from impingement syndrome of the right shoulder.  (Pl's Dep., pp. 64-66.)    Shortly thereafter, Wright underwent surgery to treat his right shoulder condition.  (*Id*., p. 66.)  During the recovery period, Wright took leave under the Family Medical Leave Act and received short-term disability benefits.  (*Id.*, p. 64.)

Shortly after his return to work in April 2007, Wright suffered two work-related injuries.  On April 26, 2007, Wright reported to HMMA that he injured his elbow.  (*Id*., p. 66.)  In July 2007, Wright also reported problems with his left shoulder.  (*Id*., p. 69.)  As both the elbow and left shoulder conditions were work-related injuries, Wright went on leave from HMMA and received Workers' Compensation Benefits through October 2007.  (*Id*., pp. 66-67; Def's Ex. 10.)

---

[3] Between April 26, 2007, through May 4, 2009, Wright was employed by HMMA but did not actively work in the weld shop.

On October 30, 2007, Wright stepped off a curb and injured his right knee.  (Pl's Dep., p. 71.)  As a result of this non-work-related injury, Wright took medical leave from HMMA and received short-term disability benefits.  (*Id*., p. 72.)  Due to the length of incapacity, Hartford Life Insurance transitioned Wright's short-term disability benefits to long-term disability benefits on May 5, 2008.  (*Id*., p. 73.)

During the course of treatment for Wright's physical impairments, Dr. McAlindon and Dr. Pinchback issued a series of work profiles for Wright.  On January 3, 2008, Dr. Robert McAlindon, an orthopedic surgeon, released Wright to return to modified duty with no lifting, pushing, or pulling more than five pounds and no outstretched reaching or work above shoulder level.  (Doc. No. 24, Pl's Ex. Y.)  On April 3, 2008, Dr. McAlindon issued a work profile indicating that Wright could return to work modified duty with no lifting, pushing, or pulling more than five pounds with each hand.  (*Id*.)

On March 14, 2008, Dr. Pinchback noted that "Wright may return to work on Wednesday March 19, 2008, with . . . minimal kneeling and squatting for the next 3 month[s]."  (Def's Ex. 6.)  On October 8, 2008, Dr. Pinchback found that "Wright may return to work on Friday, October 17, 2008, with . . . minimal kneeling, walking and squatting for the next 6 weeks."  (*Id*.)  On November 21, 2008, Dr. Pinchback determined that "Wright may return to work on Monday, December 22, 2008 with the restrictions of he must wear his knee brace at all times while working.  He can only do minimal kneeling and bending."  (*Id*.)  On February 23, 2009, Dr. Pinchback noted that "[Wright] may return to work with the

6

following restriction:  he must wear his knee brace at all times while working.  He can only do minimal kneeling and bending."  (*Id*.)

After each examination, Wright took his work profile to the We Care Facility, an independent medical clinic which manages the transition of HMMA team members returning to work from medical leave.  (*Id*., pp. 70, 77-78.)  Each time, after a We Care representative contacted a production manager about Wright's work restrictions, either a We Care representative or human resources representative would advise Wright that HMMA was unable to accommodate his restrictions.[4]  (*Id*., pp. 80-81.)  According to Wright, We Care staff members told him, "We already know about you already, we can't let you go back to work" and "reference[d] the fact that [he] had filed a lawsuit against Hyundai."  (*Id*., p. 82.)

On February 27, 2009, Jamie Spaulding, a medical leave specialist at HMMA, sent Wright a letter advising:

> Consistent with past practice, HMMA administratively terminates the employment of Team Members who have been on [long term disability] for one year.  If you remain on [long term disability] until May 2, 2009, HMMA will administratively terminate your employment unless you return to your previously assigned job in the Weld Shop by May 2, 2009 or you apply for open jobs at HMMA by May 2, 2009.

> In order to return to your previously assigned job in the Weld Shop, you must present a work release from your physician and receive the medical clearance from We Care, which is HMMA's on-site medical clinic.  If you wish to apply for open jobs at HMMA, please contact me. . . .

---

[4] On one occasion, Wright went to the We Care Facility during a plant shutdown period.  (Pl's Dep., p. 89.)  An HMMA supervisor advised that "they couldn't accommodate [him] then [and] to come back."  (*Id*.)

(Doc. No. 19, Def's Ex. 8.)   Upon receiving the letter, Wright called the Human Resources Department and told a representative that his physician had placed some restrictions on him but that he was able to do his job and that he wanted to return to work.  (Pl's Dep., p. 92.) He also told the human resources representative that if there were any other jobs available, he would be interested in applying.  (*Id*.)  The representative told him that "we don't have anything available, you have to try back again."  (*Id*., p. 93.)  When Wright called a second time, he was again advised that there were no jobs available.  (*Id*.)

On May 4, 2009, an HMMA employment manager sent a letter which stated:

> Regretfully, HMMA must administratively terminate your employment because you have been on [long term disability] for over one (1) year, because you have not reported to work at HMMA without restrictions related to your LTD-related condition since May 2, 2008, and because you have not applied for any open jobs at HMMA.  The effective date of the termination of your employment is today.  Consequently, your employment benefits will cease on May 31, 2009 at 11:59 p.m.

(Doc. No. 19, Def's Ex. 9.)

## IV. DISCUSSION

### A. The Wrongful Termination Claim

Wright argues that the defendant wrongfully terminated him in violation of the Americans with Disabilities Act.  In an employment discrimination case, the plaintiff bears the ultimate burden of proving intentional discrimination.  *Texas Dept. of Cmty Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  "For claims under the ADA, we apply the familiar

*McDonnell Douglas* burden shifting framework." *Bennett v. Dominguez*, 196 Fed. Appx. 785, 791 (11th Cir. 2006) (No. 06-10867).  Under the "*McDonnell Douglas* burden shifting framework," Valentine must first demonstrate a prima facie case of disability discrimination. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004).

To establish a prima facie case of disability discrimination under the Americans with Disabilities Act, Valentine must show that (1) he has a disability; (2) he is otherwise qualified to perform the job; and (3) he was subjected to unlawful discrimination because of his disability.  42 U.S.C. § 12132.  *See Cleveland*, 369 F.3d at 1193.  *See also D'Angelo v. ConAgra Foods, Inc*, 422 F.2d 1220, 1226 (11th Cir. 2005); *Earl v. Mervyns, Inc.,* 207 F.3d 1361, 1365 (11th Cir. 2000); *Stewart v. Happy Herman's Cheshire Bridge, Inc*., 117 F.3d 1278, 1285 (11th Cir. 1997).

First, the court concludes that Wright has established a prima facie case of disability. "A person has a disability if he: (1) has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual;" (2) has "a record of such an impairment;" or (3) is "regarded as having such an impairment.'" *Maynard v. Pneumatic Prods. Corp.*, 233 F.3d 1344, 1346 (11th Cir. 2000)  *quoting* 42 U.S.C. § 12102.

In 2008, Congress enacted the ADA Amendments Act of 2008, which became effective January 1, 2009.  *See* ADA Amendments Act of 2008, Pub.L. No. 110-325, § 8, 122 Stat. 3553, 3559 (2008).  Among the Amendments, Congress changed the definition of "disability" such that being "regarded as" having a disability no longer requires a showing

9

that the employer perceived the individual to be substantially limited in a major life activity. *See* 42 U.S.C. § 12102(3)(A).  Therefore, "[a]n individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."[5]  42 U.S.C. § 12102(3)(A).

The court's function is not to weigh evidence and determine the truth of the matter but to determine whether there is a genuine dispute of material fact for trial.  *Anderson*, 477 U.S. at 249-50.  With this caveat as its guiding principle, the court concludes that there is a genuine dispute of material fact which precludes the granting of summary judgment in this case.  Wright asserts that HMMA refused to allow him to return to work after a physician imposed restrictions on him. The medical records indicate that Wright suffers from a history of shoulder surgery, right medial and primary left lateral epicondylitis, and knee surgery.  It is undisputed that Wright submitted a medical profile to We Care on each occasion he received a medical profile indicating he could work with limited restrictions.  Wright alleges that, on one or more occasion and while in his presence, a We Care representative called a production supervisor over the radio and the following conversation occurred:

---

[5] Section 12102(3)(B) provides that an individual does not meet the requirement of "being regarded as having such impairment" if the individual's impairment is transitory and minor.  The statute further provides that "a transitory impairment is an impairment with an actual or expected duration of 6 months or less."  *Id*.  At this stage of the proceedings, the court concludes that the facts as alleged do not demonstrate that the duration of Wright's impairment lasted or was expected to last less than six months.

> They would call and say we've got up one of your members here
> ready to come back to work.  They would ask, well, who is it.
> They would tell them.   They would say, does he have
> restrictions?  And they would say, yes.  What are they?  No, we
> can't use him.

(Doc. No. 19, Pl's Dep., p. 80.)  On another occasion, a human resources representative

advised Wright that there were no jobs available for him because HMMA could not

accommodate his restrictions.  (*Id*., p. 81-82.)  Thus, at this stage of the proceedings,

Wright's argument that  HMMA regarded him as having "an actual or perceived physical ...

impairment," 42 U.S.C. § 12102(3)(A), sufficiently demonstrates a prima facie case of

disability.

HMMA argues that Wright's sworn statement to the Social Security Administration,

as well as his representations during a deposition in his Worker's Compensation case,

indicating that Wright was unable to perform any work at the time of his termination is

contrary to his claim that he is a qualified individual with a disability.  To qualify for social

security benefits, an applicant must establish that he is "not only unable to do his previous

work but cannot . . . engage in any other kind of substantial gainful work which exists in the

national economy. " 42 U.S.C. § 423(d)(2)(A).  In his applications for disability insurance

benefits and supplemental security income, Wright states that his disability began on October

17, 2007.  (Doc. No. 24-18, Ex. R.)  He subsequently amended his applications to reflect the

date of the onset of disability as March 31, 2007.  (Doc. No. 19-2, Ex. B.)

The pursuit of social security benefits does not automatically estop a recipient from

11

pursuing an ADA claim. To survive a defendant's motion for summary judgment, a plaintiff

who receives social security benefits "must explain why that SSDI contention is consistent

with [his] ADA claim that [he] could 'perform the essential functions' of [his] previous job

at least with 'reasonable accommodation.'" *Id*. at 798.  First, the court notes that there is no

evidence indicating that Wright's application for social security benefits was granted.   In

addition, Wright's sworn declaration indicates that he represented to the Social Security

Administration that he was unable to work because HMMA would not allow him to return

to his previous job.  (Attach. to Doc. No. 24.)  The court therefore concludes that Wright is

not estopped from pursuing his ADA claim on the basis that he filed an application for social

security benefits.

The court likewise concludes that Wright's deposition testimony in his Workers'

Compensation case that he did not feel like he could work because of his shoulder, elbow and

knee pain will not prevent Wright from pursuing his ADA claim in this case.  Wright argues

that the statements made during his Workers' Compensation case should be taken in context.

According to Wright, on the day of the September 15, 2009, deposition, he testified that he

did not believe that he could work at that time because his medical benefits had expired after

his termination from HMMA, he was receiving different medication through the Veterans

Association which was not as effective, he had stopped exercising, and "the pain started

setting there." (Doc. No. 24, Pl's Ex. V, pp. 107-109.)  Therefore, when taking the facts in

the light most favorable to the plaintiff as this court is required to do, it is reasonable to

assume at this stage of the proceedings that Wright's testimony concerning his ability to work on the day of the deposition was not an admission that he was unable to work at HMMA on the date of his termination.  Consequently, Wright has established the essential elements of his prima facie case on his ADA claim.

Under the second prong of the *McDonnell Douglas* test, the burden shifts to the defendant to present a legitimate, non-discriminatory reason for the employment action taken against Wright.  *McDonnell Douglas*, 411 U.S. at 802.  In this circuit, "[t]o satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus."  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997).  "To satisfy [its] burden of production, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'"  *Combs*, 106 F.3d at 1528 (quoting  *Burdine*, 450 U.S. at 254-55).  This intermediate burden is "exceedingly light."  *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994).

To the extent HMMA contends that its refusal to allow Wright to return to work based on his limited restrictions was justified because the Team Members Position Description and Physical Demands Analysis demonstrate that a team member must stand up to two hours continuously and eight or more hours a day; walk up to one hour continuously; and balance,

stoop, kneel, crouch, crawl, and climb occasionally between 1% and 33% of the work day (Attach. to. Pl's Dep., Def's Ex. 2), it is arguable that HMMA has offered a legitimate reason for the adverse employment action.  (Attach. to. Pl's Dep., Def's Ex. 2.)  Thus, Wright must show that the defendant's proffered reason for terminating him was pretextual.  *Taylor*, 175 F.3d at 868.  Wright argues that the defendant's proffered reason for terminating him is a pretext for discrimination.  Specifically, Wright asserts that his former job required less than minimal kneeling, squatting, or bending and that his restrictions would not have impaired his ability to return to work.  As support, Wright presents the declaration of Jeffery Thomas, another HMMA employee, stating that the job he shared with Wright "in the Body Floor and Side department of the Weld Shop required very little, if any, walking, kneeling, crawling, squatting, bending or stooping.  Essentially, the job required standing, and using your arms and shoulders to move parts form either racks or bins to either the body or a carrier arm for placement."  (Doc. No. 24, Pl's Ex. W.)

HMMA further argues that it did not allow Wright to return to work and terminated him because he failed to provide medical clearance to return to the Weld Shop.  (Doc. No. 18, p. 19.)  The medical profiles, however, indicate that both Dr. Pinchback and Dr. McAlindon found that Wright is able to return to work with minimal restrictions. (Doc. No. 19, Def's Ex. 6; Doc. No. 24, Pl's Ex. Y.)  In addition, there is no evidence indicating that We Care or any other medical professional refused to provide Wright medical clearance to work; rather, Wright's deposition testimony indicates that We Care personnel merely relayed

14

the information in his medical profiles to HMMA supervisors.

There are genuine disputes of fact about whether HMMA terminated him because of its perception that he suffered from a disability. Accordingly, the defendant's motion for summary judgment on the wrongful termination claim is due to be denied.

### B.  The Accommodation Claim

Wright contends that the defendant failed to accommodate him in violation of the Americans with Disabilities Act.   "The ADA defines "discrimination" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . . ."  42 U.S.C. § 12112(b)(5)(A).  *See also Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, 1224 (11th Cir. 1997).  Consequently, the ADA imposes upon employers the duty to provide reasonable accommodations for known disabilities unless doing so would result in an undue hardship to the employer.  42 U.S.C. § 12112(b)(5)(A).  *See also Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001).  It is the plaintiff's burden to identify an accommodation and demonstrate that the accommodation would permit him to perform the essential functions of his job.  *Id.* at 1255-56.  "Moreover, the burden of identifying an accommodation that would allow a qualified individual to perform the job rests with that individual, as does the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable."  *Stewart*, 117 F.3d at 1286.

15

An accommodation is reasonable only if it enables the employee to perform an essential function of the job. *Lucas*, 257 F.3d at 1255. An employee with a disability is not entitled to the accommodation of his choice, but only to a reasonable accommodation. *See Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000). A reasonable accommodation may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B).

Wright asserts that HMMA should have assigned him to another available position within HMMA or otherwise accommodated his needs. Specifically, Wright contends that by asking to return to work, he requested a reasonable accommodation. Simply requesting to return to work is not a request for a reasonable accommodation for a disability. Wright must demonstrate that he identified a reasonable accommodation, and that HMMA denied that accommodation. This he fails to do. Consequently, the plaintiff has failed to demonstrate that there exist genuine material issues of fact regarding whether he needed or requested a reasonable accommodation. Thus, the defendants are entitled to summary judgment on this claim.

### C. Retaliation

Wright asserts that he was retaliated against for filing an EEOC Charge of Discrimination and a federal lawsuit in this court asserting that HMMA unlawfully discriminated against him based on his race in violation of Title VII and age in violation of 42 U.S.C. § 1981.  Specifically, Wright argues that HMMA retaliated against him by issuing a Serious Misconduct Letter against him and refusing to allow him to return to his previously assigned job or other available jobs.

In order to establish a prima facie case of retaliation, Wright must demonstrate that (1) he participated in protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relationship between the two events.  *Gutpa v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000) *abrogated on different grounds by Crawford v. Carroll*, 529 F.3d 961, 970-71 (11th Cir. 2008); *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998).  The causal connection requirement must be construed broadly.  *See generally E.E.O.C. v. Reichhold Chem., Inc.,* 988 F.2d 1564, 1571-72 (11th Cir. 1993) ("a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated").  Once the plaintiff makes out a prima facie case of retaliation, "the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action."  *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1196 (11th Cir. 1997).  If the defendant offers a legitimate reason for the adverse employment action, the presumption of retaliation disappears.  *Id.*  The plaintiff must

17

then show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct. *Olmsted*, 141 F.3d at 1460.

HMMA does not dispute that Wright engaged in a statutorily protected expression by filing an EEOC complaint of discrimination and that his termination was an adverse employment action. (Doc. No. 18, p. 22.) As is common in these types of cases, the real issue with respect to Wright's *prima facie* showing on his retaliation claim is the third element which requires a showing of a causal link between the alleged adverse employment action and the protected activity. "The causal link element is construed broadly so that 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" *Pennington v. City of Huntsville,* 261 F.3d 1262 (11th Cir.2001) (citations omitted). One common method of establishing the causal link element is close temporal proximity between the adverse employment action and the protected activity. Of course, this is not the sole means of establishing the causal link element; rather it is merely the most commonly used approach. *Walton v. Neptune Technology Group, Inc*., No. 2:08cv5-MEF, 2009 WL 3379912, *15 (M.D.Ala. Oct. 20, 2009).

Wright filed his EEOC charge of discrimination in August 2006, received a right-to-sue letter from the EEOC in September 2007, and filed a federal lawsuit against HMMA in January 2008. HMMA terminated Wright on May 4, 2009. Thus, two years and nine months passed between the time Wright initiated EEOC proceedings against the defendant and his termination. Similarly, one year and four months passed between the time Wright initiated

federal proceedings against HMMA and the adverse employment action.  In light of the delay

between the protected activity and the adverse employment action, the timing of the events

does not constitute circumstantial evidence of a causal link.  *See Clark County School Dist.*

*v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing affirmatively several court of appeals

decisions for the proposition that a three to four month gap is insufficient to establish the

causal relation prong in a retaliation case).  *See also Burkette v. Montgomery County Bd. of*

*Education*, No. 2:04cv1143-WKW, 2006 WL 3147435, *7 (M.D. Ala. Oct. 31, 2006) (three

years between filing of EEOC complaint and failure to promote and one year between filing

of lawsuit and failure to promote) (unpublished).

The court likewise concludes that Wright's assertion that HMMA retaliated against

him by issuing a Serious Misconduct Letter does not demonstrate that he was subjected to

an adverse employment action.  Wright argues that the placement of negative memoranda in

his file amounted to an adverse employment action.  Title VII prohibits discrimination with

respect to an employee's "compensation, terms, conditions, or privileges of employment."

42 U.S.C. § 2000e-2(a).  However, not all conduct by an employer which negatively affects

an employee constitutes an adverse employment action.  *See Davis v. Town of Lake Park*,

245 F.3d 1232, 1239 (11th Cir. 2001).  To prove the existence of an adverse employment

action, "an employee must show a *serious and material* change in the terms, conditions, or

privileges of employment."  *Id*.  "Moreover, the employee's subjective view of the

significance and adversity of the employer's action is not controlling; the employment action

19

must be materially adverse as viewed by a reasonable person in the circumstances." *Id.*

> Employer criticism, like employer praise, is an ordinary and appropriate feature of the workplace. Expanding the scope of Title VII to permit discrimination lawsuits predicated only on unwelcome day-to-day critiques and assertedly unjustified negative evaluations would threaten the flow of communication between employees and supervisors and limit an employer's to maintain and improve job performance. Federal courts ought not be put in the position of monitoring and second-guessing the feedback that an employer gives, and should be encouraged to give, an employee. Simply put, the loss of prestige or self-esteem felt by an employee who received what he believes to be unwarranted job criticism or performance review will rarely – without more – establish the adverse action necessary to pursue a claim under Title VII's anti-discrimination clause.

*Davis*, 245 F.3d at 1242.

This court cannot conclude that the Serious Misconduct Letter included within Wright's personnel file constituted an adverse employment action. There is no evidence indicating that, during Wright's employment with HMMA, he lost any pay or benefits as a result of the Serious Misconduct Letter. Wright fails to establish a prima facie case of retaliation. For this reason, the motion for summary judgment on the retaliation claim is due to be granted.

## V. CONCLUSION

Accordingly, it be and is hereby

ORDERED as follows:

1.      The Motion for Summary Judgment with respect to the Title VII wrongful

termination claim be DENIED.

2.      The Motion for Summary Judgment with respect to the accommodation and

retaliation claims be GRANTED and these claims be dismissed against

HMMA.

DONE this 10th day of July, 2012.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE